**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

THOMAS JEREMY FIELLO,      )
                                )
              Plaintiff,     )
                                )
              v.             )      1:20cv182
                                )
DAIMLER TRUCKS NORTH AMERICA LLC  )
f/k/a FREIGHTLINER LLC, et al.,  )
                                )
              Defendants.    )

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Defendants' Joint Motion for Rule 35 Examination" (Docket Entry 36) (the "Motion"). For the reasons that follow, the Court will grant the Motion in part.

### BACKGROUND

Alleging negligence and gross negligence in connection with a workplace injury, Thomas Jeremy Fiello (the "Plaintiff") initiated a lawsuit against Daimler Trucks North America LLC, formerly known as Freightliner LLC ("Daimler"), in Rowan County Superior Court. (Docket Entry 4 (the "Original Complaint").) Daimler responded by filing a notice of removal (Docket Entry 1), invoking this Court's diversity jurisdiction (id., ¶ 6). Daimler then answered the Original Complaint (Docket Entry 7), and the parties submitted a joint report pursuant to Federal Rule of Civil Procedure 26(f) (Docket Entry 12; see also Text Order dated Apr. 14, 2020 (adopting joint report with one clarification)).

Plaintiff thereafter moved to amend the Original Complaint by adding a new party, Handling Services, Inc. ("HSI"), and asserting claims against both Daimler and HSI (collectively, "Defendants"). (See Docket Entries 14 (the "Motion to Amend"), 15 (supporting memorandum), 15-1 (the "Proposed Amended Complaint").) After Daimler consented to that request (Docket Entry 16 at 1), the Court granted the Motion to Amend and directed Plaintiff to file the Proposed Amended Complaint (Text Order dated Aug. 3, 2020; see also Docket Entry 17 (the "Amended Complaint")). In particular, the Amended Complaint alleges:

> Plaintiff [] during pertinent times has worked as a Quality Inspector and Onsite Representative for Molded Fiber Glass, Co. ("MFG"), a contractor who provides services on location at the Daimler manufacturing facility located at 11550 Statesville Boulevard, Cleveland, NC 27013 (the "Cleveland Facility"). MFG supplies Daimler with molded fiberglass fairings that Daimler installs on top of Daimler truck cabs.

> On November 17, 2018, an overhead jib crane in the Daimler Cab Line Area (i.e., the 400 Building, in the vicinity of door 420) broke off its mounting hinge and fell on [Plaintiff] as he was walking through a doorway, causing [him] to suffer a traumatic brain injury and other significant injuries (the "Incident"). The overhead jib crane in the Cab Line Area that fell on and injured [Plaintiff] was designated "P63-J1" (hereinafter the "Crane").

(Docket Entry 17, ¶¶ 1-3.)

The Amended Complaint further alleges that "[Plaintiff] suffered significant physical personal injury due to the Incident, and [has continued to] suffer[] from significant memory impairment and headaches and from other physical, mental and neurological

2

issues as a proximate result of his injuries." (Id., ¶ 4.) In connection with those allegations, the Amended Complaint asserts claims for negligence and gross negligence against Daimler, "the sole owner and operator of the Cleveland Facility" (id., ¶ 8), and HSI, which "perform[ed] periodic inspections of the Crane" for Daimler (id., ¶ 9). (See id., ¶¶ 50-66, 67-80, 81-85.)[1]

After the parties commenced discovery, Defendants moved, pursuant to Federal Rule of Civil Procedure 35 ("Rule 35") "for an Order Compelling Plaintiff to attend a neuropsychological evaluation performed by Dr. Shelley Leininger" ("Dr. Leininger"). (Docket Entry 36 at 1; see also Docket Entry 37 (the "Memorandum").) The Memorandum explains that, before filing the Motion, Defendants contacted Plaintiff, requesting that Plaintiff consent to such an examination. (Docket Entry 37 at 2.) According to the Memorandum, Plaintiff wrote back to Defendants, agreeing to the examination but proposing certain terms and conditions. (Id. at 2-3.) Defendants replied with their own offer. (Id. at 3.) The Motion followed after the parties failed to resolve their disagreements concerning some aspects of the examination. (See Docket Entry 37-2 at 1 (Defendants offering "to withdraw the [M]otion" if the parties could "reach a resolution on

_____

1 The Amended Complaint also lodged a negligence per se claim against Daimler and HSI. (See id., ¶¶ 86-96.) After HSI moved for partial judgment on the pleadings as to that claim (Docket Entry 27 at 1), all parties stipulated to its dismissal (Docket Entry 29 at 1-2).

3

the[ disputed] issues").)  Defendant attached as exhibits to the Memorandum copies of the foregoing correspondence (see Docket Entries 37-1 ("Plaintiff's Letter"), 37-2), as well as an affidavit from Dr. Leininger (Docket Entry 37-3), Plaintiff's supplemental initial disclosures (Docket Entry 37-4), Plaintiff's responses to HSI's interrogatories (Docket Entry 37-5), a transcript from a hearing before the North Carolina Industrial Commission involving Plaintiff and the Incident (Docket Entry 37-6), and an article from an academic journal (Docket Entry 37-7).

Plaintiff responded in partial opposition to the Motion, maintaining that such examination should occur "subject to certain protections and protocols to allow for transparency and fairness." (Docket Entry 39 ( the "Response") at 1.)  The Response details the terms on which Plaintiff voluntarily would submit to an examination (see id. at 3-21) and includes, as an exhibit, a proposed order permitting such examination on those terms (Docket Entry 39-4). Defendants replied, accepting several of Plaintiff's conditions but indicating continued disagreement on other topics.  (Docket Entry 41 (the "Reply") at 1-2.)  Defendants likewise attached a proposed order.  (See Docket Entry 41-1.)

## DISCUSSION

### I. Relevant Legal Standards

"The court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to

4

a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1).[2] Such an order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). "A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf v. Holder, 379 U.S. 104, 119 (1964) (internal citation omitted). More specifically, as relevant here,

> [m]ental or physical conditions have been found to be in controversy where (1) the plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) the plaintiff has claimed unusually severe emotional distress; (3) the plaintiff has alleged a specific type of disorder or other psychiatric injury; (4) the plaintiff has offered her own expert testimony to supplement her claim of emotional distress; or (5) the plaintiff concedes that her medical condition is "in controversy" pursuant to Rule 35.

EEOC v. Maha Prabhu, Inc., No. 3:07-cv-111, 2008 WL 2559417, at *3 (W.D.N.C. June 23, 2008) (unpublished).

---

2  The parties do not dispute that Dr. Leininger qualifies as "a suitably licensed or certified examiner," Fed. R. Civ. P. 35(a)(1). (See Docket Entry 37 at 3 (referencing Dr. Leininger's credentials); Docket Entry 39 at 1-21 (failing to question Dr. Leininger's qualifications).) In particular, Dr. Leininger averred that she became a licensed psychologist in 2013 and obtained board certification in clinical neuropsychology in 2015. (Docket Entry 37-3, ¶¶ 1-2.)

5

Additionally, a Rule 35 examination requires a showing of good cause. Fed. R. Civ. P. 35(a)(2)(A); <u>see also</u> M.D.N.C. LR 26.1(e) ("For good cause appearing therefor, the physical or mental examination of a party may be ordered at any time prior to trial."); <u>Guilford Nat'l Bank v. Southern Ry. Co.</u>, 297 F.2d 921, 924 (4th Cir. 1962) ("Under Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate."). Good cause may exist when "the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries" <u>Maha Prabhu, Inc.</u>, 2008 WL 2559417, at *2, and when "the movant [cannot] obtain the desired information by other means," <u>Schlagenhauf</u>, 379 U.S. at 118. Courts also may order a Rule 35 mental examination when a plaintiff intends to offer expert testimony as to his or her mental condition and a defendant wishes "to obtain an expert to . . . provide a counter-expert opinion in response . . . ." <u>M.M. v. Burke Cnty. Pub. Sch. Bd. of Educ.</u>, No. 1:13cv204, 2014 WL 2812536, at *2 (W.D.N.C. June 23, 2014) (unpublished).

## II. Analysis

According to the Memorandum, Plaintiff's mental condition qualifies as "in controversy" because (i) the Amended Complaint alleges "severe physical and mental impairments as a result of [the Incident]," including "a traumatic brain injury" (Docket Entry 37

6

at 4 (quoting Docket Entry 17, ¶ 2)), (ii) "Plaintiff's initial disclosures and discovery responses also discuss . . . his mental condition and impairments, . . . including specific types of disorders [he] suffered as a result of th[e Incident]" (id.), and (iii) "Plaintiff sought treatment from Dr. [Jeffrey] Ewert [("Dr. Ewert")], a board certified neuropsychologist . . . [who] performed neuropsychological testing on Plaintiff and continues to treat [him] for his alleged cognitive impairments" (id. at 5). As concerns good cause, the Memorandum references Dr. Ewert's evaluation of Plaintiff (id. at 6), as well as "testing performed by another physician" (id.) and states that Defendants have sought an "independent medical-psychological evaluation . . . to rebut Plaintiff's evidence" (id. at 7). To that end, Defendants have "request[ed] that Plaintiff . . . undergo a neuropsychological evaluation, involving cognitive testing of thinking abilities . . . [to] include a clinical interview." (Id.)

The Response does not challenge the propriety of such examination (Docket Entry 39 at 1); instead, it focuses on 13 conditions that Plaintiff has requested but that Defendants have "contested . . . in full or part" (id. at 3). (See id. at 3–21.) The Reply narrows such conditions to three main topics: "Plaintiff's continued request for audio and/or video recording of the examination[,] . . . production of raw test data, [and]

information required to be produced under Rule 35" (Docket Entry 41 at 2).

As far as the "in controversy" and "good cause" requirements, Defendant has demonstrated that the circumstances warrant a Rule 35 mental examination. With respect to the former requirement, Plaintiff's mental condition qualifies as "in controversy" because he (i) "has alleged a specific type of disorder or other psychiatric injury," Maha Prabhu, Inc., 2008 WL 2559417, at *3, and (ii) has "concede[d] that h[is] medical condition is 'in controversy' pursuant to Rule 35," id. In particular, the Amended Complaint alleges that Plaintiff sustained "a traumatic brain injury due to the Incident[, . . . which] has caused him significant symptoms, issues and ongoing effects" (Docket Entry 17, ¶ 23), to include "dizziness and headaches" (id.) as well as "significant memory impairment [and] other physical, mental and neurological issues" (id., ¶ 4). During discovery, Plaintiff's initial disclosures and responses to HSI's interrogatories likewise referenced such injuries. (See Docket Entry 37-4 at 4; Docket Entry 37-5 at 4-9.) Finally, Plaintiff has not disputed that his mental condition remains in controversy. (See Docket Entry 39 at 1-21.)

Turning to the "good cause" requirement, the circumstances here satisfy that standard because expert testimony may inform "the nature, extent, and cause of [Plaintiff's alleged mental] injuries"

8

<u>Maha Prabhu, Inc.</u>, 2008 WL 2559417, at *2, and because Plaintiff has sought treatment from individuals who may provide such testimony on his behalf (<u>see, e.g.</u>, Docket Entry 37-6 at 40-43 (Plaintiff testifying during a hearing before the North Carolina Industrial Commission that Dr. Ewert performed a neuropsychological evaluation on him)). As Defendants have argued, their inability "to obtain an expert to question Plaintiff and prepare a[ competing] expert report" would prejudice their defense against the claims in this action (Docket Entry 37 at 6 (quoting <u>M.M.</u>, 2014 WL 2812536, at *2)). Accordingly, Defendants have demonstrated that good cause exists to require Plaintiff to submit to a Rule 35 mental examination.

The Court below considers the conditions that should govern such examination.

### A. Recording the Examination

In Plaintiff's Letter, Plaintiff proposed bringing "a videographer [to] record the entire [examination]" (Docket Entry 37-1, ¶ 6). In the Memorandum, Defendants objected to that proposal, contending that the presence of a videographer "would violate[] Dr. Leininger's ethical obligations and . . . impact the validity and reliability of her testing." (Docket Entry 37 at 11.) The Memorandum asserts that recording the examination would deviate from standard testing conditions, such that the results may not lend themselves to comparison, and further states that most courts

have not allowed the recording of Rule 35 examinations. (See Docket Entry 37 at 11-13; see also Docket Entry 37-3, ¶ 7 (Dr. Leininger averring that attendance of "interested third part[y]" during examination would "violat[e ]American Psychological Association (APA) Ethical Standard 9.11 Maintaining Test Security, among other ethical standards").)

The Response maintains that the Court should allow audio and/or video recording throughout all or part of Plaintiff's examination in light of the fact that Defendants selected Dr. Leininger (such that she may not qualify as impartial) (Docket Entry 39 at 8) and because Plaintiff "has suffered a traumatic brain injury [as well as] diagnosed memory loss and concentration problems" (id. at 9). The Response highlights the existence of non-intrusive methods of recording and insists that such methods involve fewer disruptions and distractions than a live observer. (See id. at 10-18.)

"Most courts analyze a request for a recording device the same way they evaluate whether to permit the presence of an attorney during a Rule 35 examination." Ornelas v. Southern Tire Mart, LLC, 292 F.R.D. 388, 396-97 (S.D. Tex. 2013). "Unless the [party requesting such relief] demonstrates a special need or good cause, most federal courts have not permitted either a recording or an observer of an examination." Spencer v. Huron Cnty., No. 15-cv-12209, 2016 WL 4578102, at *3 (E.D. Mich. Sept. 2, 2016)

(unpublished). On the one hand, "[m]ere concern that a doctor might not be completely objective, without any supporting evidence, [cannot] justify the intrusion and deviation from normal medical examination procedures that the presence of a third party or recording device would create." Rael v. Chavez, Civ. Action No. 13-249, 2014 WL 12791239, at *2 (D.N.M. May 20, 2014) (unpublished). On the other hand, courts may allow the parties to record an examination when an examinee's mental issues, including memory problems and limited cognitive abilities, raise doubts about "whether [the examinee would] be capable of providing any assistance to his attorney in understanding what took place during the examination," Schaeffer v. Sequoyah Trading & Transp., 273 F.R.D. 662, 664 (D. Kan. 2011). In considering requests to record examinations (or to allow an observer to attend), courts also have recognized that such procedures may

> (1) . . . invalidate the examination results; (2) impede
> the conversation between the physician and the patient;
> (3) inject an adversarial partisan atmosphere into what
> should be otherwise a wholly objective inquiry; and
> (4) subvert the purpose of Rule 35 which is to put both
> plaintiff and defendant on an equal footing in evaluating
> the plaintiff's mental status.

Herkalo v. National Liberty Ins. Corp., Civ. Action No. 94-7660, 1995 WL 739694, at *1 (E.D. Pa. Dec. 8, 1995) (unpublished).

Here, Plaintiff has failed to demonstrate "a special need or good cause," Spencer, 2016 WL 4578102, at *3, for recording the examination. Although the Response asserts that "[t]he possible

11

adversary status of [Dr. Leininger]" (Docket Entry 39 at 8) weighs in favor of allowing a recording, the potential for bias exists in virtually every case, and courts have declined to permit recordings on that basis alone. See, e.g., Rael, 2014 WL 12791239, at *2 ("This fear [of a partisan examiner] exists to an equal degree with regard to any doctor [the p]laintiff has retained."); see also Greenhorn v. Marriott Int'l, 216 F.R.D. 649, 654 (D. Kan. 2003) ("[T]he court will require [the examiner] to tape-record his sessions with [the] plaintiff in light of [the] plaintiff's concerns (and, more specifically, in light of evidence in the record suggesting that plaintiff's concerns are legitimate) about [the examiner's] conduct during such examinations.").

The Response otherwise relies on Plaintiff's allegations about his mental condition to argue that recording remains appropriate (see Docket Entry 39 at 9-11; see also Docket Entry 37-5 at 7-8 (Plaintiff's response to interrogatories describing his "reported and/or . . . diagnosed" cognitive difficulties)) but cites no evidence to support that conclusion (see Docket Entry 39 at 1-21). In one case when a court allowed a party to record a Rule 35 examination, "counsel for both sides agree[d] that [the] plaintiff ha[d] a lengthy history of serious mental issues that kept him institutionalized for a significant portion of his life." Schaeffer, 273 F.R.D. at 664. In another case, "there was a sufficient evidentiary basis to support [the] conclusion that the

12

examination should be recorded" Maldonado v. Union Pac. R.R. Co., Case No. 09-1187, 2011 WL 841432, at *3 (D. Kan. Mar. 8, 2011) (unpublished) (emphasis added), based on the showing that "the p]laintiff ha[d] a third-grade education and [wa]s a non-English speaker, id., and "based on Plaintiff's experts' reports and the fact that Plaintiff was a patient at the Neurological Rehabilitation Living Center, [which] support[ed] a finding that [the p]laintiff's memory and other cognitive abilities [we]re impaired," id.; see also id. ("[B]ased on the evidence just described, . . . [the p]laintiff's current condition warranted recording the examination."). In this case, Plaintiff's allegations, standing alone, fail to justify recording the examination, particularly in light of the problems that such practice may invite. See Herkalo, 1995 WL 739694, at *1.[3] Accordingly, the Court rejects Plaintiff's request to allow an audio and/or video recording of the examination.

## B. Production of Raw Test Data

Although Plaintiff's Letter asks that Dr. Leininger supply Dr. Ewert with "all raw test data and scoring sheets . . . within 10 days of completion of [Plaintiff's] examination and testing" (Docket Entry 37-1, ¶ 10), Plaintiff thereafter submitted a

---

    3 Because the Response focuses on the mechanics of obtaining audio and video recordings, particularly unobtrusive means of doing so (see Docket Entry 39 at 14-17), the Court notes that recording a Rule 35 examination raises concerns unrelated to disruptive recording equipment. See Herkalo, 1995 WL 739694, at *1.

proposed order that contemplates the provision of such material to Plaintiff's counsel (see Docket Entry 39-4, ¶ 20). Defendants have agreed to share such material with Dr. Ewert but opposed the latter request, contending that "only a qualified psychologist, with access to the material to interpret the test data, may receive such data" (Docket Entry 41 at 3). (See also id. at 2–3 (citing APA Ethical Principals and Code of Conduct).) Notwithstanding that refusal, Defendants have agreed that Dr. Leininger will "prepare a written report consistent with and similar to reports she prepares after performing other neuropsychological evaluations and consistent with Rule 35" (Docket Entry 41-1, ¶ 16).

Under Rule 35, an examiner's written report "must set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests." Fed. R. Civ. P. 35(b)(2). Under Federal Rule of Civil Procedure 26 ("Rule 26"), an expert witness's written report must provide "the facts or data considered by the witness in forming [the expert witness's opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii). "[R]eports generated pursuant to Rule 35 are not identical to the contents of an expert report as required by Rule 26(a)(2)." Garayoa v. Miami-Dade Cnty., No. 16-Civ-20213, 2017 WL 2880094, at *4 (S.D. Fla. July 6, 2017) (unpublished).

In light of the foregoing, the Court declines, at this stage, to order that, as a condition under Rule 35, Dr. Leininger share with Plaintiff's counsel the raw data from Plaintiff's examination.

14

By agreement, Dr. Leininger will provide such data to Dr. Ewert. If Defendants designate Dr. Leininger as an expert who will prepare a written report, to the extent such data forms the basis of her opinions, the Court trusts that Defendants will comply with their Rule 26 disclosure obligations. See, e.g., Hirschheimer v. Associated Metals & Minerals Corp., No. 94CIV6155, 1995 WL 736901, at *5 (S.D.N.Y. Dec. 12, 1995) (unpublished) (noting that Rule 26 required disclosure of raw data that formed basis of expert opinions, if party intended to call such witnesses at trial).

## C. Materials from Dr. Leininger

Plaintiff's Letter proposes that, before the examination, Dr. Leininger provide "[a] current copy of [her] *curriculum vitae*[,] . . . billing schedule[,] . . . [and a] list of any and all testimony [she] has given at depositions, hearings or trials within the last three years to include the name of the case; case number; name of the patient examined; name, address, and phone number of the attorneys involved; and the amount of compensation she was paid, and by whom." (Docket Entry 37-1, ¶ 5.) Plaintiff's Letter further asks that, after the examination, Dr. Leininger supply "a detailed written report summarizing the results of the examination and any opinions [she] intends to offer in this case." (Id., ¶ 11.) The Memorandum challenges only certain aspects of those requests. In particular, the Memorandum asserts that Defendants "have provided those materials required to be disclosed

15

pursuant to Rule 26(a)(2)(B)." (Docket Entry 37 at 9.) Such materials include Dr. Leininger's CV, billing schedule, and "a list of all other cases in which, during the previous 4 years, [Dr. Leininger] testified as an expert at trial or by deposition" (id. (quoting Fed. R. Civ. P. 26(a)(2)(B)(v))). However, Defendants have refused to "provide the 'name of [the] patient examined; name, address, and phone number of the attorneys involved; and the amount of compensation she was paid, and by whom'" (id. (quoting Docket Entry 37-1, ¶ 5)), arguing that such disclosure would "violat[e ]Dr. Leininger's ethical obligations under the Health Insurance Portability and Accountability Act and [APA] Ethical Standard 4.01" (id.). Additionally, Defendants have maintained that Dr. Leininger's Rule 35 report need not "contain 'any opinions [she] intends to offer in this case'" (id. at 11 (quoting Docket Entry 37-1, ¶ 11)) because such opinions remain the subject of a Rule 26 expert report, not yet due under the amended scheduling order (id. (citing Docket Entry 34)).

As with Plaintiff's request that Dr. Leininger provide raw data directly to Plaintiff's counsel, the broader disclosures that Plaintiff has requested relate more closely to Rule 26 than Rule 35. As noted by Defendants, "Plaintiff will have an opportunity to seek the information he requests" (Docket Entry 41 at 4) if Defendants designate Dr. Leininger as a testifying expert.

16

Therefore, the Court rejects Plaintiff's effort to condition the Rule 35 examination on such disclosures.

**D. Other Issues**

The proposed orders that Plaintiff and Defendants have tendered conflict on other, seemingly less substantial issues. The Court resolves those conflicts as follows.

**1. Scope of Examination**

Plaintiff has proposed limiting the examination to "the issues of [his] claimed injuries and physical, cognitive, and mental health conditions but as to no other matters." (Docket Entry 39-4, ¶ 8.) In contrast, Defendants have sought to restrict Dr. Leininger's inquiry "to [Plaintiff's] claimed injuries and <u>past and present</u> physical, cognitive, and mental health conditions." (Docket Entry 41-1, ¶ 12 (emphasis added).)

"For the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze [a] plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations. Accordingly, courts refrain from limiting the manner in which an examination is conducted or the questions asked absent good cause for a protective order." <u>Gade v. State Farm Mut. Auto. Ins. Co.</u>, No. 5:14-cv-48, 2015 WL 12964613, at *4 (D. Vt. Jan. 2, 2015) (unpublished) (internal citation, brackets, and quotation marks omitted). To the extent Plaintiff has suggested narrower limitations than Defendants, the Court

17

adopts Defendants' proposal because, "[i]n establishing Plaintiff's overall health and the degree to which Plaintiff's alleged conditions impact h[is] life, it is permissible for Dr. [Leininger] to ask about Plaintiff's general health and h[is] condition prior [to], during, and after the [Incident]," id. at *5.

### 2. Duration of Examination

In Plaintiff's view, the examination should last "no more than approximately eight hours, including a lunch break." (Docket Entry 39-4, ¶ 7.) According to Defendants, "Dr. Leininger's neuropsychological evaluations ordinarily take eight hours, including a lunch break; however, neuropsychological testing varies based on the examinee and his or her performance at the testing and the complexity of the case." (Docket Entry 41-1, ¶ 14.)

"Courts generally do not limit the amount of time an examining physician will have to conduct the examination." Gade, 2015 WL 12964613, at *6. As a result, the Court declines to impose a time limit and expects that all involved will exercise courtesy and reasonableness in attending and conducting the examination.

### 3. Scheduling of Examination

The parties have agreed that "[t]he date and time of the examination shall be determined and scheduled by agreement of the parties and shall occur within 30 days of the date of this Order" (Docket Entry 41-1, ¶ 3). (See also Docket Entry 39-4, ¶ 3.) However, Defendants have proposed allowing for a Saturday

18

examination, to accommodate both [Plaintiff]'s and Dr. Leininger's
full-time jobs" (Docket Entry 41-1, ¶ 4). Plaintiff's proposed
order expresses no view on that issue. (See Docket Entry 39-4,
¶¶ 1–22.) Additionally, Plaintiff has requested two weeks' notice
of the examination (id., ¶ 4), a condition to which Defendants
initially agreed (see Docket Entry 37 at 7 (agreeing to
"condition[] . . . two" in Plaintiff's Letter); Docket Entry 37-1,
¶ 2 (Plaintiff's Letter requesting two weeks' notice)). In
contrast, Defendants' proposed order allows for "as much advance
notice of the examination as possible, with a minimum of five days'
notice required" (Docket Entry 41-1, ¶ 5).

Because a Saturday examination appears reasonable under the
circumstances, the Court directs the parties to consider that
option in finding a mutually agreeable time. Also, Defendants
shall give Plaintiff two weeks' notice of the examination date and
time, as previously agreed, to allow Plaintiff "to provide adequate
notice to his employer" (Docket Entry 39-4, ¶ 4).

### 4. Reimbursement of Travel Expenses

Plaintiff's proposed order provides that "Defendants will
reimburse Plaintiff for reasonable travel expenses, including gas,
related to the examination" (Docket Entry 39-4, ¶ 9). Defendants
have offered "a mileage reimbursement at the current IRS rate for
[Plaintiff]'s roundtrip travel from his home to Dr. Leininger's
office" (Docket Entry 41-1, ¶ 7).

19

"The general rule is that 'the party being examined must pay her own expenses for coming to the examination and must also bear the loss of time and earnings.'" <u>Clancy v. Shanahan</u>, No. 18-4106, 2019 WL 1406281, at *5 (D. Kan. Mar. 28, 2019) (unpublished) (quoting 8B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2234 (3d ed.)). To the extent Plaintiff has sought reimbursement beyond what Defendants have offered to provide, the Court denies that request.

### 5. Pre-Examination Disclosures

The parties have agreed that

> [Plaintiff] shall not be required to bring any of his medical records or diagnostic films to the exam, but will supplement his discovery responses and initial disclosures, pursuant to Rule 26 . . . to provide all updated medical records and bills as they become available and no later than one week prior to the scheduled evaluation.

(Docket Entry 39-4, ¶ 11; <u>see also</u> Docket Entry 41-1, ¶ 9.) Separately, Defendants have requested that "[Plaintiff] . . . provide a list (including: name, date, and type of treatment) of any and all care received and/or provided in the week prior to the examination to Dr. Leininger on the date of his evaluation" (Docket Entry 41-1, ¶ 10.) Plaintiff's proposed order does not address that topic. (<u>See</u> Docket Entry 39-4, ¶¶ 1–22.)

Consistent with Rule 26(e), and to ensure that Dr. Leininger possesses updated information before conducting Plaintiff's

20

examination, the Court directs Plaintiff to supplement as requested by Defendants.

**CONCLUSION**

Defendants have demonstrated that Plaintiff's mental condition remains in controversy and that good cause exists to order a Rule 35 mental examination.   As far as the conditions for such examination, Plaintiff has failed to show that the circumstances warrant an audio or video recording.   Additionally, the Court declines to condition the examination on disclosures from Dr. Leininger beyond what Rule 35 requires.   In particular, Dr. Leininger need not produce raw data from Plaintiff's mental examination directly to Plaintiff's counsel but must comply with Rule 26, as applicable and at the appropriate time.   Finally, the Court (i) declines to limit the scope or length of Dr. Leininger's examination, (ii) directs the parties to consider scheduling the examination on a Saturday, (iii) requires that Defendants give Plaintiff two weeks' notice of the examination, (iv) rejects Plaintiff's request for travel reimbursement beyond what Defendants have offered, and (v) orders Plaintiff to update Dr. Leininger with any treatment or care he receives in the week preceding the examination.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 36) is **GRANTED IN PART** as follows:

1. Plaintiff shall submit to a neuropsychological examination conducted by Shelley Leininger, Ph.D.

2. The examination shall occur at the office of Dr. Leininger at Carolinas Neuropsychology PLLC, 501 South Sharon Amity Road, Suite 500, Charlotte, North Carolina 28211, with telephone number of (704) 325-9412 (or at such other location as the parties mutually agree).

3. The date and time of the examination shall be determined and scheduled by agreement of the parties and shall occur within 30 days of the date of this Order.

4. The examination may occur on a Saturday in order to accommodate both Plaintiff's and Dr. Leininger's full-time jobs.

5. Defendants shall provide Plaintiff with at least two weeks' notice of the examination date and time in order to allow him to provide adequate notice to his employer.

6. Dr. Leininger shall perform a neuropsychological examination involving cognitive testing of thinking abilities, as well as an assessment of mood and symptoms. The examination and testing of Plaintiff shall relate to his claimed injuries, as well as his past and present physical, cognitive, and mental health conditions.

7. Dr. Leininger shall perform the examination of Plaintiff based on ethical guidelines governing forensic and clinical evaluations.

8. Dr. Leininger shall perform the examination as efficiently as possible.

9. Defendants shall pay for the full cost of the examination and report summarizing the results of the examination.

10. Defendants shall provide a mileage reimbursement at the current IRS rate for Plaintiff's roundtrip travel from his home to Dr. Leininger's office.

11. Defendants will provide Plaintiff's counsel with Dr. Leininger's current CV, billing or fee schedule, and a list of cases as required under Rule 26(a)(2)(v), which will indicate whether a Rule 35 examination and/or independent medical examination occurred. Dr. Leininger need not provide testimony as to her testing or specific results of any prior Rule 35 and/or independent examinations.

12. Dr. Leininger shall not require or request Plaintiff to fill out forms or questionnaires except neuropsychological testing materials on the day of the examination. An informed consent form shall be provided in advance to Plaintiff's counsel for Plaintiff to complete.

13. Plaintiff shall not be required to bring any of his medical records or diagnostic films to the examination but will supplement his discovery responses and initial disclosures, pursuant to Rule 26 of the Federal Rules of Civil Procedure, to provide all updated medical records and bills as they become

23

available and no later than one week prior to the scheduled examination.

14. Plaintiff shall provide a list (including: name, date, and type of treatment) of any and all care received and/or provided in the week prior to the examination to Dr. Leininger on the date of the examination.

15. Dr. Leininger's questions shall be reasonably related to Plaintiff's medical, psychological, and cognitive conditions. For the purpose of taking a clinical history, Dr. Leininger may question Plaintiff about what happened regarding the Incident.

16. Dr. Leininger shall prepare a written report consistent with and similar to reports she prepares after performing other neuropsychological examinations and consistent with Rule 35 of the Federal Rules of Civil Procedure.

17. Dr. Leininger's report shall include the (a) identity of every test administered and (b) the standard, scaled, and percentile scores (to the extent they exist) for each test.

18. Dr. Leininger shall, by no later than 30 days following the examination, furnish Plaintiff's counsel with a copy of Dr. Leininger's report.

19. Dr. Leininger shall provide her raw data, including scoring sheets, directly to Dr. Jeffrey Ewert, or any other similarly suited professional upon notification and/or request by Plaintiff, Plaintiff's counsel, or Defendants' counsel.

24

20. Dr. Leininger, Defendants, Defendants' counsel, and Defendants' witnesses shall not represent to the jury that Dr. Leininger was appointed by the Court, or that the examination was requested or required by the Court.

21. This Order does not include any determinations as to admissibility of examination questions, responses, or other content. Any such determination as to the admissibility of evidence related to the examination shall be determined at the time said evidence is offered to this Court.

22. The entry of this Order shall not be deemed or construed or argued to be a finding or an admission that Dr. Leininger, Dr. Ewert, or any other designated psychological expert or provider is a qualified expert in any field or is qualified or allowed to testify as to any opinions.


April 12, 2021

                    /s/ L. Patrick Auld
                    **L. Patrick Auld**
                    **United States Magistrate Judge**